UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ANDREA M. RIZZITANO, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 13-11154-JLT |
| THE DEPARTMENT OF CHILDREN | * | |
| & FAMILIES, et al., | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM

January 29, 2014

TAURO, J.

I.      Introduction

Plaintiff Andrea M. Rizzitano brings this suit against Defendants Department of Children & Families, Deval Patrick, Virginia Peel, John Polanowicz, Angelo McClain, Latoya Valentine, Barbara Hannigan, Leo Racine, Madelyn Bank, and Debra Hoyte (collectively, "Defendants") for a variety of federal and state law claims arising from the death of Plaintiff's great-nephew, K.W.H. Plaintiff sues individually, on behalf of K.W.H.'s estate, and as Parent and Next Friend of her great-niece K.H. Presently at issue is Defendants' Motion to Dismiss Plaintiffs' Complaint [#27]. For the following reasons, the Motion is ALLOWED.

II.      Background[1]

Plaintiff is the great-aunt of siblings K.W.H. and K.H., both minors.[2] K.W.H. suffered a

---

[1] Because the issues analyzed here arise in the context of a motion to dismiss, this court presents the facts as they are related in Plaintiff's Second Amended Complaint, see Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008), and construes those facts in the light most favorable to Plaintiff, see Pettengill v. Curtis, 584 F. Supp. 2d 348, 362 (D. Mass. 2008) (quoting Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007)).

fractured arm while in the custody of his mother, Christina H.[3] After the fracture, Defendant Department of Children and Families ("DCF") removed K.W.H. from Christina H.'s care for approximately one week to investigate abuse and neglect allegations and then returned K.W.H. to Christina H.'s care.[4] At the time, Plaintiff warned Defendants against returning K.W.H. to Christina H.'s care.[5]

On May 12, 2010, K.W.H. died after Christina H., in an attempt to stop K.W.H. from crying, punched K.W.H. in the torso twice and ruptured K.W.H.'s spleen.[6] Christina H. subsequently pleaded guilty to manslaughter.[7] Plaintiff is now attempting to adopt K.H., who is presently in Plaintiff's care.[8]

Plaintiff initiated suit on May 9, 2013. She amended her complaint twice, most recently on July 5, 2013. On July 29, 2013, Defendants filed the motion to dismiss that is currently before this court.

III.   Discussion

   1.   Eleventh Amendment Sovereign Immunity

Under the Eleventh Amendment, Article III courts lack jurisdiction to adjudicate claims brought by private parties against a state unless the state consents or unless Congress abrogates

---

[2] See 2d Am. Compl. ¶¶ 5, 14 [#22].

[3] See 2d Am. Compl. ¶¶ 65, 67, 71, 73 [#22].

[4] See 2d Am. Compl. ¶ 74 [#22].

[5] See 2d Am. Compl. ¶¶ 61, 64, 65, 67, 75 [#22].

[6] See 2d Am. Compl. ¶¶ 18, 19, 20, 81 [#22].

[7] See 2d Am. Compl. ¶ 59 [#22].

[8] See 2d Am. Compl. ¶¶ 54, 55, 67 [#22].

its sovereign immunity.[9] The Eleventh Amendment also bars federal-law claims seeking money damages against state officials in their official capacities.[10]

Here, the Commonwealth has not consented to suit and Congress has not abrogated its sovereign immunity. Defendant DCF, a state agency, is therefore immune from suit, as are the Defendants who are sued in their official capacities for violations of state law.

Plaintiff does not specifically allege claims against Defendants in their individual capacities. In three counts, however—Counts VI, X, and XIV—Plaintiff does not specify whether the claims are against Defendants in their official or individual capacities. Because Plaintiff's claims fail whether they are levied against Defendants in their individual or official capacities, this court need not determine the capacities in which Plaintiff intended to sue Defendants.

It is worth noting that Plaintiff argues that Defendants raised their Eleventh Amendment argument too late. Most courts, however, find Eleventh Amendment arguments timely unless the state seemed to consent to federal jurisdiction, such as by claiming sovereign immunity for the first time after a very substantial delay.[11] Here, Defendants claimed sovereign immunity in their motion to dismiss, which Defendants filed within the same month as Plaintiff's Second Amended Complaint. Because the motion to dismiss was one of Defendants' earliest opportunities to claim

---

[9] U.S. Const. amend. XI; see Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984); see also Quern v. Jordan, 440 U.S. 332, 342 (1979) (holding that 42 U.S.C. § 1983 does not override the states' Eleventh Amendment immunity); Irwin v. Comm'r of the Dep't of Youth Servs., 388 Mass. 810 (1983) (holding that the Massachusetts Torts Claim Act does not constitute a waiver of Eleventh Amendment immunity).

[10] See Edelman v. Jordan, 415 U.S. 651, 663 (1974).

[11] See, e.g., McGuigan v. Conte, 629 F. Supp. 2d 76, 83 (D. Mass. 2009) ("'The test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one.'" (quoting Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985))).

immunity, Defendants timely claimed immunity.

After excluding all claims barred by the Eleventh Amendment, the only remaining claims are those against Defendants in their individual capacities and the federal-law claims seeking injunctive relief against Defendants in their official capacities.[12]

2. <u>Counts I Through IX: Federal-Law Claims</u>

a. <u>Counts I and V: Fourth Amendment Unreasonable Search and Seizure Claims</u>

Count I alleges that Defendants violated Plaintiff's Fourth and Fourteenth Amendment rights by establishing policies allowing child protective service workers to commit abuses of process. Count V alleges a § 1983 claim that Defendants violated the Fourth and Fourteenth Amendments by engaging in abuses of process, resulting in unreasonable seizure, compulsory process, and K.W.H.'s death. Both claims fail because Plaintiff fails to properly allege Fourth Amendment violations.

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." To succeed on a Fourth Amendment search and seizure claim, a plaintiff must show that there was a search or seizure and that the search or seizure was unreasonable.[13] A person is seized if a reasonable person would have believed that he was not free to leave,[14] such as during

---

[12] Specifically, the Eleventh Amendment bars Counts I, II, III, IV, V, VII, VIII, and IX to the extent that they seek monetary relief because they constitute claims against Defendants in their official capacities under federal law. The Eleventh Amendment bars Counts XI, XII, and XIII because they are state-law claims against state agents in their official capacities. The Amendment also bars Count VI if alleged against Defendants in their official capacities and requesting money damages and Counts X and XIV if alleged against Defendants in their official capacities.

[13] <u>See</u> <u>Graham v. Connor</u>, 490 U.S. 386, 395–96 (1989).

[14] <u>United States v. Mendenhall</u>, 446 U.S. 544, 554 (1980).

certain encounters with law enforcement.[15] Circumstances that might transform an encounter into a seizure include "'the threatening presence of several officers, the display of the officers' weapons, any physical touching of the defendant, and the use of language or tone of voice that indicates that compliance with the officers' request is not discretionary.'"[16]

Here, Plaintiff does not explicitly allege any abuses of process or unreasonable searches or seizures of herself, K.H., or K.W.H. Counts I and V focus on Defendants' alleged "threats" that Plaintiff might lose custody of K.H.[17] The alleged threats do not rise to the level of a seizure under the Fourth Amendment, because a reasonable person in K.H.'s or Plaintiff's place would not have felt unable to leave or physically restrained.[18] And Plaintiff does not suggest that the Commonwealth's custody of K.H. or K.W.H. was unreasonable. Indeed, Plaintiff argues that the Commonwealth should have taken custody of the minors sooner than it did.[19]

Because Plaintiff fails to properly allege Fourth Amendment violations, Counts I and V are dismissed.

> b.  Count II: Sixth Amendment Violation

To the extent that Count II can be read to allege a claim against Defendants in their

---

[15] See, e.g., Florida v. Bostick, 501 U.S. 429, 434 (1991); Mendenhall, 446 U.S. at 554.

[16] United States v. Shaw, 874 F. Supp. 2d 13, 19 (D. Mass. 2012) (Tauro, J.) (quoting United States v. Ford, 440 F. Supp. 2d 16, 20 (D. Mass. 2006)).

[17] See 2d Am. Compl. ¶¶ 94–96, 115 [#22].

[18] See Mendenhall, 446 U.S. at 554; see also Silvan W. v. Briggs, 309 Fed. App'x 216, 225–26 (10th Cir. 2009) (holding that fleeing parents were not "seized" by an officer's telephone call demanding that they return home with their child or face a felony fleeing charge); Rodgers v. Lincoln Towing Serv., Inc., 771 F.2d 194, 199–200 (7th Cir. 1985) (holding that the plaintiff failed to state a Fourth Amendment claim where he appeared at a police station following a threatening phone call from a police detective requesting he go to the station to answer charges of vandalism).

[19] See 2d Am. Compl. ¶¶ 14, 58 [#22].

individual capacities, it fails to state a claim. Count II asserts that Defendants violated the Sixth Amendment. The Sixth Amendment provides the rights that an accused enjoys in a criminal prosecution. The Sixth Amendment does not apply to civil cases,[20] and the complaint does not allege that Plaintiff has been subject to a criminal prosecution. Count II is therefore dismissed.

      c.  <u>Count III: Conspiracy Under § 1985</u>

In Count III, Plaintiff attempts to state a § 1985 conspiracy claim.[21] Section 1985 does not cover conspiracies generally. Rather, § 1985 covers conspiracies concerning (1) officers of the United States; (2) intimidating parties, witnesses, or jurors from attending court; or (3) depriving a person or class of persons of the equal protection of the laws.[22]

Here, Plaintiff's allegations do not concern officers of the United States or intimidating parties, witnesses, or jurors.[23] Plaintiff similarly fails to allege deprivation of the equal protection of the laws, as Plaintiff does not allege that she, K.W.H., or K.H. was treated differently than similarly situated individuals or that Defendants' actions were motivated by Plaintiff's membership in a distinct group.[24] Finally, Plaintiff's sole allegation supporting the existence of a conspiracy alleges only that Defendants had a meeting of the minds, without any specification or

---

[20] <u>Turner v. Rogers</u>, 131 S. Ct. 2507, 2516 (2011).

[21] <u>See</u> 2d Am. Compl. ¶¶ 102–05 [#22].

[22] 42 U.S.C. § 1985.

[23] <u>See</u> <u>id.</u>

[24] <u>See</u> <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 101–02 (1971) ("[T]here must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."); <u>Estate of Bennett v. Wainwright</u>, 548 F.3d 155 (1st Cir. 2008) (holding that a plaintiff claiming a denial of equal protection must "make a plausible showing that he or she was treated differently from others similarly situated" (citing <u>Clark v. Boscher</u>, 514 F.3d 107, 114 (1st Cir. 2008))).

explanation.[25] Such a "naked assertion" devoid of "further factual enhancement" fails to meet the standard required of pleadings at this stage.[26] Accordingly, Count III is dismissed.

> d.  <u>Count IV: Violations of Plaintiff's Due Process and Equal Protection Rights</u>
>     <u>Under the Fifth, Sixth, Eighth, and Fourteenth Amendments</u>

In Count IV, Plaintiff alleges violations of her Fifth, Sixth, Eighth, and Fourteenth Amendment rights.[27] Her Fifth and Fourteenth Amendment arguments both concern equal protection. Plaintiff fails to allege, however, sufficient facts for a violation of any of the four Amendments she invokes.

The Sixth and Eighth Amendments do not apply in the civil context.[28] With regard to equal protection, whether proceeding under the Fourteenth Amendment's explicit guarantee of equal protection or the implicit protection of the Fifth Amendment,[29] a plaintiff must show that the defendant acted with discriminatory intent.[30]

Here, Plaintiff's Sixth and Eighth Amendment arguments fail because this is a civil case. Plaintiff's Fifth and Fourteenth Amendment arguments fail because Plaintiff does not allege that she, K.W.H., or K.H. is a member of a protected class or suffered disparate treatment.[31] Because it fails to state a claim, Count IV is dismissed.

---

[25] <u>See</u> 2d Am. Compl. ¶ 104 [#22].

[26] <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

[27] <u>See</u> 2d Am. Compl. ¶¶ 106–08 [#22].

[28] <u>See</u> <u>Ingraham v. Wright</u>, 430 U.S. 651, 651 (1977) ("[T]he Eighth Amendment . . . was designed to protect those convicted of crime . . . ."); <u>supra</u> note 20 and accompanying text.

[29] <u>See</u> <u>Bolling v. Sharpe</u>, 347 U.S. 497, 498–99 (1954).

[30] <u>Lipsett v. Univ. of P.R.</u>, 864 F.2d 881, 896 (1st Cir. 1988).

[31] <u>See</u> <u>Wainwright</u>, 548 F.3d at 166–67.

e.   Count VI: Retaliation in Violation of the First Amendment

Count VI alleges that Defendants violated Plaintiff's First Amendment protections by retaliating against Plaintiff because of Plaintiff's speech.[32] Plaintiff does not successfully allege the elements of a retaliation claim.

A successful retaliation claim requires a plaintiff to demonstrate that (1) the plaintiff engaged in constitutionally protected conduct, (2) the plaintiff suffered adverse action, and (3) a causal connection between the constitutionally protected conduct and the adverse action existed such that the protected conduct was a motivating factor to the adverse action.[33] The plaintiff must also show there was no permissible reason for the adverse action.[34]

Here, Plaintiff's retaliation claim arises from notices Plaintiff received from an office of Defendant DCF and Ms. Novello, a non-defendant DCF social worker, inquiring into Plaintiff's mental health.[35] Plaintiff alleges that these communications were retaliation for Plaintiff's conversations with the press about the events described in Plaintiff's complaint.[36] Plaintiff's claim fails for several reasons. The complaint does not provide a time period during which Plaintiff allegedly engaged in protected activities.[37] Ms. Novello's notice cannot constitute retaliation by Defendants as Ms. Novello is not a Defendant. Finally, it would have been permissible for Defendants, who were charged with the care of K.H., to inquire into the mental

---

[32] See 2d Am. Compl. ¶ 122 [#22].

[33] Price v. Wall, 464 F. Supp. 2d 90, 96 (D.R.I. 2006) (citing Wheeler v. Natale, 178 F. Supp. 2d 407, 410 (S.D.N.Y. 2001)).

[34] See id.

[35] See 2d Am. Compl. ¶¶ 120–31 [#22].

[36] See 2d Am. Compl. ¶ 122 [#22].

[37] See 2d Am. Compl. ¶¶ 120–31 [#22].

health of Plaintiff, because she sought custody of K.H. Because Plaintiff fails to state a

retaliation claim, Count VI is dismissed.

   f. <u>Count VII: Due Process Violation</u>

   Count VII alleges violations of K.H. and K.W.H.'s substantive due process rights by

Defendants acting in their official capacities. To the extent that Count VII could be read to allege

a claim against the identified Defendants in their individual capacities, however, the claim is

nevertheless dismissed.

   The Due Process Clause of the Fourteenth Amendment does not create a constitutional

duty on the part of a state "to provide substantive services for those within its border."[38] Indeed,

the Due Process Clause *limits* a state's power to act by forbidding it to deprive individuals of life,

liberty, or property without due process of law.[39] The Clause is not a guarantee of safety and

security and "its language cannot fairly be extended to impose an affirmative obligation on the

State to ensure that those interests do not come to harm through other means."[40]

   Here, Christina H., K.W.H.'s mother, not Defendants, abused and killed K.W.H. These

tragic events do not establish a substantive due process violation on the part of Defendants.[41]

Further, Plaintiff does not claim the Commonwealth failed to provide for K.H.'s needs while in

---

[38] <u>Youngberg v. Romeo</u>, 457 U.S. 307, 317 (1982) (citing <u>Harris v. McRae</u>, 448 U.S. 297, 318 (1980)).

[39] <u>DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.</u>, 489 U.S. 189, 195 (1989).

[40] <u>Id.</u>; <u>see id.</u> at 196 (stating that the purpose of the Due Process clause is to "protect the people from the State, not to ensure that the State protected them from each other").

[41] <u>See id.</u> at 202–03 ("Judges and lawyers, like other humans, are moved by natural sympathy in a case like this to find a way for [the child] to receive adequate compensation for the grievous harm inflicted upon [him]. But before yielding to that impulse, it is well to remember once again that the harm was inflicted not by the State . . . , but by [the child's parent].").

DCF custody,[42] and Plaintiff would need to show ongoing violations of the law to receive injunctive relief.[43] As such, Count VII fails to state a due process violation and is dismissed.

> g.  Count VIII: Violation of the Right to Familial Relationships Under the First, Ninth, and Fourteenth Amendments

Count VIII also appears to allege a claim against Defendants in their official capacities only. But to the extent that Count VIII could be read to allege a claim against Defendants in their individual capacities, it fails to allege facts to support a violation of the right to familial relationships.

The Supreme Court has recognized "a right to familial integrity derived from the broad right to association under both the First Amendment and the Ninth Amendment's reservation of rights to the people."[44] Not every statement or act that interferes with this right is actionable, however.[45] Rather, a plaintiff must prove that the defendant's actions were directly aimed at the plaintiff's relationships, with knowledge that the conduct would adversely affect those relationships.[46] If a governmental action affects a plaintiff's relationship with his or her child

---

[42] See id. at 200 (citing Youngberg, 457 U.S. at 315–16).

[43] See Green v. Mansour, 474 U.S. 64, 72 (1985).

[44] Connor B. v. Patrick, 771 F. Supp. 2d 142, 163–64 (D. Mass. 2011) (citing Roberts v. U.S. Jaycees, 468 U.S. 609, 617–20 (1984)).

[45] Valdivieso Ortiz v. Burgos, 807 F.2d 6, 8 (1st Cir. 1986) ("These substantive due process cases do not hold that family relationships are, in the abstract, protected against all state encroachments, direct and indirect, but only that the state may not interfere with an individual's right to choose how to conduct his or her family affairs.").

[46] Griffin v. Strong, 983 F.2d 1544, 1548 (10th Cir. 1993) (citing Trujillo v. Bd. of Cnty. Comm'rs, 768 F.2d 1186, 1190 (10th Cir. 1985)); see Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 563 (1st Cir. 1988) (citing Valdivieso, 807 F.2d 6).

only incidentally, there is no due process violation.[47]

With regard to the right to familial association, due process is violated only if a state seeks to sever entirely a relationship between family members.[48] And no individual has a constitutionally protected right to adopt a child, even if the individual and the child are biologically related.[49]

Here, to the extent that Plaintiff attempts to assert a familial association claim based on the death of K.W.H., Plaintiff has failed to state a claim. K.W.H.'s death was caused by his mother's acts of physical abuse, and the complaint does not indicate that any of Defendants' actions were directly aimed at the familial relationships of Plaintiff, K.W.H., or K.H.[50] In fact, Plaintiff contends that the issue is DCF's reunification of K.W.H. with his biological mother, not any actions by DCF aimed at interfering with that relationship.[51]

To the extent that Count VIII is based upon contact between Plaintiff and K.H., Plaintiff has likewise failed to state a claim. Plaintiff has no constitutional right to adopt K.H., and thus Plaintiff's allegations regarding K.H.'s adoption process do not implicate constitutional concerns.[52] Regardless of the relationship at issue in Plaintiff's claim, therefore, Count VIII is dismissed.

---

[47] See Valdivieso, 807 F.2d at 8–9.

[48] See Connor B., 771 F. Supp. 2d at 162.

[49] See Mullins v. Oregon, 57 F.3d 789, 797 (9th Cir. 1995) (holding that "grandparents *qua* grandparents have no constitutionally protected liberty interest in the adoption of their children's offspring").

[50] See Griffin, 983 F.2d at 1548.

[51] See 2d Am. Compl. ¶¶ 61, 64, 65, 67, 75 [#22].

[52] See Mullins, 57 F.3d at 797.

h.   Count IX: Violation of Procedural Due Process

To the extent that Count IX could be read to allege a claim against Defendants in their individual capacities, Plaintiff does not allege a successful procedural due process claim. Procedural due process requires that if a state or the federal government deprives a person of a life, liberty, or property interest, the person must first be given notice and the opportunity to be heard.[53] The requirements of procedural due process do not apply to every governmental action that adversely affects an individual.[54] Rather, procedural due process protects only those liberty interests that are derived from state law or from the Due Process Clause itself.[55]

Here, Plaintiff has not cited any protected interest grounded in Massachusetts law. Plaintiff alleges only that Defendants have denied without due process Plaintiff, K.H., and K.W.H. of their rights to be free from harm and from excessive interference in raising a family. As the Supreme Court has held, however, there is no generalized right to be free from harm.[56] Moreover, K.W.H. was not in DCF's care or custody when his mother abused him. Plaintiff has therefore failed to state a plausible claim that a state actor has deprived her, K.H., or K.W.H. of a protected interest. Furthermore, even if Plaintiff had adequately alleged a deprivation, there is no factual allegation that she, K.H., or K.W.H. was denied appropriate procedural safeguards.[57] Accordingly, Count IX is dismissed.

---

[53] See, e.g., Gonzalez-Fuentes v. Molina, 607 F.3d 864, 886 (1st Cir. 2010).

[54] See Mullins, 57 F.3d at 795.

[55] See Hewitt v. Helms, 459 U.S. 460, 466 (1983), overruled on other grounds by Sandin v. Conner, 515 U.S. 472 (1995).

[56] See DeShaney, 489 U.S. at 195.

[57] See, e.g., Parratt v. Taylor, 451 U.S. 527, 541 (1981).

3.      Counts X Through XIV: State-Law Tort Claims

After dismissing Counts I through IX, the only remaining claims are based in state law. This court thus has pendent jurisdiction over the remaining claims.[58] Although this court could decline to exercise its supplemental jurisdiction over the state-law claims,[59] this court has reviewed Plaintiff's claims in detail. This court chooses, therefore, on the grounds of judicial efficiency, to exercise pendent jurisdiction.

a.      Count X: K.H.'s Loss of Consortium

Count X alleges that Defendants' actions deprived K.H. of K.W.H.'s consortium. Because Massachusetts does not recognize claims for loss of consortium as a result of an injury to a sibling,[60] Count X is dismissed.

b.      Counts XI through XIV: Negligence Claims

Counts XI through XIV allege claims of gross negligence, negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress.[61] In Massachusetts, however, public employees acting within the scope of their employment are immune from suit for negligence and gross negligence.[62] Here, Plaintiff has not alleged that any

---

[58] See 28 U.S.C. § 1367(a).

[59] See id. § 1367(c).

[60] E.g., Bobick v. U.S. Fid. & Guar. Co., 439 Mass. 652, 664 (2003).

[61] Although Count XIV is entitled "Intentional Infliction of Emotional Distress," the substance of the count makes clear that it is a negligence claim. See 2d Am. Compl. ¶ 174 [#22] ("As a proximate result of Defendants' negligence . . . ."); id. ¶ 175 ("As a direct and proximate result of Defendants' negligence . . . ."); see also id. ¶¶ 171, 173. The title of the count, alone, is not sufficient to remove the claim from the realm of negligence. Cf. Iqbal, 556 U.S. at 678.

[62] Mass. Gen. Laws ch. 258, § 2; see, e.g., Wilmot v. Tracey, 938 F. Supp. 2d 116, 144 (D. Mass. 2013) ("[T]he claims of negligent infliction of emotional distress must be dismissed as against the individual DCF defendants.").

of the Defendants named in their individual capacities were not acting within the scopes of their employment. Accordingly, Defendants are immune from suit on the basis of negligence. Counts XI through XIV are therefore dismissed.

      4.      Counts XV Through XVII: Prayers for Relief

Counts XV through XVII do not allege viable legal claims.[63] Instead, they amount to prayers for relief, which are not properly pled as stand-alone counts. Further, because this court dismisses all other counts of the complaint, Plaintiff is not entitled to the relief requested in these "counts." Counts XV through XVII are therefore dismissed.

IV.    Conclusion

Because all of Plaintiff's claims are either barred by the Eleventh Amendment or fail to state a claim for which relief may be granted, Defendants' Motion to Dismiss is ALLOWED. AN ORDER HAS ISSUED.

/s/ Joseph L. Tauro
United States District Judge

---

[63] Count XV is for "Punitive Damages," Count XVI is for "Attorney's Fees," and Count XVII is for "Damages." 2d Am. Compl. 46, 47, 48 [#22].